IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION


WILLIAM J. LAMANNO, et al.              )
                                        )
     Plaintiffs,                      )
                                        )
v.                                      ) Case No. 4:17-cv-00256-HFS
                                        )
FRIENDLY FIREARMS, LLC, et al.          )
                                        )
     Defendants.                      )


**<u>SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND</u>**

THE ACCURSO LAW FIRM
A Professional Corporation

  /s Andrew H. McCue
Louis C. Accurso      #29827
laccurso@accursolaw.com
Andrew H. McCue    #36145
amccue@accursolaw.com
4646 Roanoke Parkway
Kansas City, Missouri 64112
PH:    (816) 561-3900
FAX:  (816) 561-2992

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT .......................................................................................................... 5

I. THE PETITION STATES NEGLIGENCE CLAIMS AGAINST REIDLE FOR HIS ROLE IN MILLER'S CONTINUOUS ASSAULT AND MURDER OF TERRI LAMANNO USING BOTH SHOTGUNS. ........................................................ 7

   A. THEORIES OF LIABILITY ......................................................................... 7

      1. Negligence Per Se ......................................................................... 7

      2. Negligent Entrustment ................................................................ 8

      3. Aiding and Abetting .................................................................... 9

   B. BOTH SHOTGUNS AND ALL DEFENDANTS' UNLAWFUL ACTS CONTRIBUTED TO CAUSE TERRI LAMANNO'S DEATH. ................................................... 9

   C. BOTH SHOTGUNS AND ALL DEFENDANTS' UNLAWFUL ACTS CONTRIBUTED TO CAUSE CONSCIOUS PAIN AND SUFFERING TO TERRI LAMANNO PRIOR TO HER DEATH. ...................................................................................... 12

II. WALMART HAS NOT AND CANNOT SHOW THAT PLAINTIFFS LACK THE INTENTION TO PURSUE THEIR CLAIMS AGAINST REIDLE TO JUDGMENT ........................................................................................................... 13

CONCLUSION ...................................................................................................... 15

Case 4:17-cv-00256-HFS   Document 6   Filed 05/08/17   Page 2 of 20

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Accord*, *In re Business Men's Assurance Co.*, 992 F.2d 181 (8th Cir. 1993) ................................. 6

*Anderson v. Home Ins. Co.*, 724 F.2d 82 (8th Cir.1983) ................................................ 13

*Blum v. Airport Terminal Services, Inc.*, 762 S.W.2d 67 (Mo. App. E.D.1988) ......................... 12

*Carlson v. K–Mart Corp.*, 979 S.W.2d 145 (Mo. banc 1998) ....................................... 10

*Carlyle v. Lai*, 783 S.W.2d 925 (Mo. App. W.D. 1989) ................................................ 14

*Central Iowa Power Co-Op. v. Midwest Independent Transmission System Operator, Inc.*,

    561 F.3d 912 (8th Cir. 2009) ................................................................ 5

*Collins v. Hertenstein*, 90 S.W.3d 87 (Mo. App. W.D. 2002) ..................................... 10

*Corporan v. Wal-Mart Stores East, LP*, 194 F.Supp.3d 1128 (D. Kan. 2016) ......................... 2, 7

*Cubie v. Staples Contract & Commercial Inc.*, 2013 WL 1385014 (W.D. Mo.) . 6, 8, 9, 12, 13, 15

*Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13 (Mo. App. W.D. 2013) ......................... 12

*Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016) ................................................ 8

*Filla v. Norfolk S. Ry. Co.*, 336 S.W.3d 806 (8th Cir. 2003) ......................................... 6

*Harvey v. Washington*, 95 S.W.3d 93 (Mo. banc 2003) ................................................ 10

*Hayes v. Travelers Indemnity Company*, 2012 WL 5285775 (E.D. Mo.) ............ 6, 8, 9, 12, 13, 15

*King v. Morgan*, 873 S.W.2d 272 (Mo. App. W.D. 1994) ........................................... 7

*Lonergan v. Bank of America, N.A.*, 2013 WL 176024 (C.D. Mo.) ................................. 9

*Mathes v. Sher Express, L.L.C.*, 200 S.W.3d 97 (Mo. App. W.D. 2006) ..................... 11

*Reeb v. Wal-Mart Stores, Inc.*, 902 F. Supp. 185 (E.D. Mo. 1995) ............................... 13

*Schwenn, et al. v. Sears, Roebuck, and Co.*, et al., 822 F.Supp. 1453 (D. Minn.1993) ............... 13

*Shirley v. Glass*, 308 P.3d 1 (Kan. 2013) .................................................... 7

*Smith v. Lewis*, 669 S.W.2d 558 (Mo. App. W.D. 1983) ................................................... 3

*State v. Rollins*, 321 S.W.3d 353 (Mo. App. W.D. 2010) .................................................. 1

*Sundermeyer v. SSM Regional Health Services*, 271 S.W.3d 552 (Mo. 2008) ........................... 10

*Wilks v. Stone*, 339 S.W.2d 590 (Mo. App. S.D. 1960) ................................................... 8

## **Statutes**

§ 537.090, RSMo. ................................................................................ 12

§ 571.060.1(1) RSMo. ............................................................................ 7

15 U.S.C. 7903 .................................................................................. 8

18 U.S.C. § 922 ................................................................................. 7

28 U.S.C. §1332 ............................................................................... 1, 6

28 U.S.C. §1441 ................................................................................ 5

28 U.S.C. §1447 ............................................................................ 1, 6, 15

## **Other Authorities**

Restatement (Second) of Torts § 876 ........................................................... 9

## INTRODUCTION

Missouri resident defendant John Mark Reidle "straw purchased" a Remington shotgun from defendant Wal-Mart, Inc. ("Wal-Mart") for Frazier Glenn Miller, a convicted felon, who then used the weapon in the assault and attempted murder of plaintiffs' decedent, Terri LaManno.[1]  Doc. 1-5 at 10:15-11:23.  As part of the same continuous assault, Miller grabbed a second Stevens shotgun – which he had also obtained through Reidle – and shot LaManno dead as she stood frozen in fear, begging for her life.  *Id*. at 12:23-14:24.

Despite those facts, Wal-Mart has removed this case contending that plaintiffs have not adequately pleaded and cannot prove that Reidle's unlawful conduct contributed to cause Terri LaManno's death, rendering Reidle's joinder "fraudulent," and conferring this Court with diversity jurisdiction.  Doc. 1 at ¶¶ 11-12; 20-21.  Wal-Mart claims to have tumbled to that conclusion when plaintiffs' lawyer seconded Reidle's lawyer in objecting to Wal-Mart's improper questions during Reidle's deposition on March 8, 2017.  *Id*. at ¶ 13.

The speculative premises underlying Wal-Mart's removal are fallacious.  Walmart's legal argument for removal is a *non-sequitur*.  The removal is, in all respects, frivolous.

Plaintiffs' petition states a wrongful death claim against Reidle; it follows inexorably that his joinder cannot be fraudulent.  Reidle is a Missouri resident; therefore, there is no jurisdiction under, 28 U.S.C. §1332.  The Court is thus required to remand this case to state court, and it should assess fees and costs against Wal-Mart for its serial abuse of the removal statute.[2]  28 U.S.C. §1447(c).

---

[1] The Remington gun misfired when Miller pulled the trigger.  That is attempted murder under Missouri law.  *State v. Rollins*, 321 S.W.3d 353, 361 (Mo. App. W.D. 2010).

[2] Wal-Mart previously removed the case alleging the Court had federal "arising under" jurisdiction.  The Court did not reach the merits of that tenuous argument because Reidle did not

Plaintiffs' state court petition, filed on April 14, 2014, originally asserted a wrongful death claim, premised on multiple negligence theories, against Reidle; Friendly Firearms, LLC; its John Doe Employees 1 through 5; R.K. Shows, Inc.; and R.K. Shows Mo. Inc. (collectively, the "Gun Show defendants," some of whom were Missouri residents) based upon the alleged "straw purchase" of the Stevens shotgun at a gun show in Springfield, Missouri and Reidle's transfer of the weapon to Miller. Doc. 1-1 at ¶¶ 6-12;18-70. The petition also alleged a multi-theory wrongful death claim against Reidle and Wal-Mart based upon Reidle's straw purchase of the Remington gun and its transfer to Miller. *Id*. at ¶¶ 6; 18-19; 26-70.

In specific, the petition alleged that "Miller . . . used the subject firearms to assault and murder Terry LaManno," *id*. at ¶ 32; that "Terry LaManno experienced conscious pain and suffering during the assault culminating in her death;" *id*. at ¶ 33; and that the "negligence of all defendants directly caused, directly contributed to cause, or combined with the acts of others to directly cause Terry LaManno's death . . . ."[3] *Id*. at ¶ 34.

Plaintiffs dismissed the Gun Show defendants on September 26, 2016. Doc. 103. Plaintiffs' wrongful death cause of action was thus reduced to a claim against Reidle and Wal-Mart based on the straw purchase of the Remington shotgun used in Terri LaManno's assault and attempted murder, and against Reidle for transferring the Stevens shotgun that Miller used to kill

---

consent to removal, requiring remand of the case. Case No. 4:16-00361-CV-W-HFS, Doc. 33. In a related case, the District Court of Kansas rejected Wal-Mart's "arising under" federal question arguments. *Corporan v. Wal-Mart Stores East, LP*, 194 F.Supp.3d 1128, 1131-32 (D. Kan. 2016).

[3] Wal-Mart's removal papers incorrectly state that plaintiffs plead a single "firearm was used to murder Terry LaManno . . . ." Doc. 1 at ¶ 5. In fact, the petition is replete with allegations that Miller used both guns in one continuous assault that culminated in her death. *Id*. at ¶¶ 32-33; 36-38; 46-47; 61-62; 67-68.

2

her.[4]  For ease of reference, a red-lined copy of plaintiffs' petition, shorn of allegations directed exclusively at the dismissed Gun Show defendants, is attached as Exhibit A.

On February 24, 2017, plaintiffs sent Wal-Mart a notice to take Reidle's deposition.  Doc. 1-6.  It plainly disclosed that he was represented by the Strong-Garner-Bauer law firm in Springfield, Missouri.  *Id*. at 4.  Nonetheless, Wal-Mart's lawyers arranged for an interview of Reidle the week before the deposition without his lawyer (or any other party's lawyer) present. Reidle depo., copy attached as Exhibit B, at 66:1-8; 72:17-25.  During the *ex parte* interview, Wal-Mart elicited Reidle's inadmissible opinion that "there's no way that Wal-Mart could have known that [Reidle wasn't] the purchaser of [the Remington shotgun.]"  *Id*. at 71:12-21.

Reidle testified in his deposition that he knew Miller was a felon, *id*. at 14:24-15:6; that he (Reidle) purchased the Stevens shotgun for his own use and that it was not a straw purchase, *id*. at 64:17-65:7; and that the Wal-Mart transaction was a straw purchase for Miller for which he (Reidle) pled guilty to a felony.  *Id*. at 55:4-9; 56:16-57:3.  He further testified that Miller borrowed the Stevens gun from his live-in, that he (Reidle) knew about it, but that he never tried to get the gun back.  *Id*. at 47:16-48:8.

Wal-Mart's lawyer attempted to interrogate Reidle about the circumstances under which he came to be represented by a lawyer and the particulars of their fee arrangement.  Contrary to the central misleading premise of Wal-Mart's removal notice, *Reidle's lawyer **first** objected that*

---

[4]  For that matter, the petition also states a claim against John Doe No. 6, the Wal-Mart clerk who sold the gun to Reidle and Miller.  Plaintiffs have since learned that clerk is Danny Hanafin, a Missouri resident.  Under Missouri law, plaintiffs are entitled to substitute Hanafin for John Doe No. 6.  *Smith v. Lewis*, 669 S.W.2d 558, 561–62 (Mo. App. W.D. 1983).

*such information was privileged*, and LaMannos' counsel joined in the objection.[5] The entire exchange – as opposed to the perniciously paraphrased and incomplete testimonial excerpts presented in Wal-Mart's removal papers – is set forth in full below:

> [By MS. COOPER]: Q. All right, and do you have an agreement with Steve Gardner law firm or with any lawyer, whether it's Mr. Wagner or any other lawyer, that you're going to pay for their representation of you?
>
> MR. WAGNER: Objection –
>
> MR. McCUE: I object to that. You go ahead, Caleb.
>
> MR. WAGNER: I was going to say, that seeks privileged information.
>
> MS. COOPER: It's not privileged information. Pursuant to the Oklahoma, or excuse me, the Missouri Supreme Court, nature of a fee arrangement is specifically not, and it's Koster vs. Cain, which is 383 Southwest 3d 105.
>
> MR. McCUE: How old is that?
>
> MS. COOPER: Pardon me?
>
> MR. McCUE: How old is that?
>
> MS. COOPER: 2012.
>
> MR. McCUE: I think the circumstances under which he hired a lawyer are privileged and that's my objection.
>
> MS. COOPER: Well, you don't – you wouldn't have the privilege 'cause you're not his lawyer; you're suing him.
>
> MR. McCUE: I can nonetheless make the objection. I don't have to be his lawyer.
>
> MR. WAGNER: I've made the objection at any at any rate, so.

*Id.* at 66:23-68:1. When Wal-Mart persisted in delving into the circumstances of Reidle's representation, *all* the other parties objected:

---

[5] The deposition excerpts upon which Wal-Mart relies are quoted and paraphrased in its notice of removal. The entire exchange quoted above is buried among the 289 pages of exhibits attached to the notice.

[By MS. COOPER]: Q. So, what's your understanding of why a lawyer would have just called and offered to represent you?

MR. WAGNER: Objection. Same objection.

MR. McCUE: I object to calling for speculation.

BY MS. COOPER: Q. Go ahead.

MR. MORANTZ: Join, and misstates –

MR. McCUE: And I also think it misstates his testimony as well because he told you he got a letter. So, he might have told you two different things, but I don't think your hypothetical includes that.

*Id*. at 69:9-22. Moreover, Reidle proceeded to answer the improper questions. *Id*. at 69:3-71:21.

According to Wal-Mart, the foregoing colloquy – or at least the parts Wal-Mart saw fit to disclose to the Court – compels the conclusion that plaintiffs have no intention of pursuing their claims against Reidle to judgment, making his joinder fraudulent. Doc. 1 at ¶¶ 22-26.

Wal-Mart's argument is sophistry. Plaintiffs' petition states valid wrongful death claims against Reidle and Wal-Mart (and John Doe No. 6/Danny Hanafin, the Missouri resident Wal-Mart clerk who sold the Remington shotgun to Miller and Reidle). The fact that plaintiffs' lawyer joined Reidle's lawyer in objecting to Wal-Mart's improper questions does not bear on plaintiffs' intention to pursue their claims against Reidle a bit more than the man in the moon. It certainly does not conclusively establish an intention *not* to do so. There is no basis for federal jurisdiction. Plaintiffs' motion to remand should be sustained.

## ARGUMENT

Civil actions may be removed only if the action could have been originally filed in federal court. 28 U.S.C. § 1441(b); *Central Iowa Power Co-Op. v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). The removing party has the burden to establish federal subject matter jurisdiction; all doubts about jurisdiction must be

resolved in favor of remand. *Id. Accord, In re Business Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993).

Where, as here, the removing party predicates jurisdiction on 28 U.S.C. § 1332, complete diversity of citizenship must exist between all plaintiffs and all defendants. When complete diversity does not exist, 28 U.S.C. § 1447(c) requires the district court to remand the case to state court.

A court may disregard the citizenship of a non-diverse defendant who was fraudulently joined to defeat diversity jurisdiction. *Cubie v. Staples Contract & Commercial Inc.*, 2013 WL 1385014, *1 (W.D. Mo.). However, the removing defendant bears a heavy burden to prove by clear and convincing evidence that joinder of the resident defendant was fraudulent. *Id.* at *2, *citing Hayes v. Travelers Indemnity Company*, 2012 WL 5285775, * 2 (E.D. Mo.). If the resident defendant's liability under state law is uncertain, the federal district court should not undertake to decide the state law question on a motion to remand, but should instead remand the case for the state courts to decide. *Id.* at *1, *citing Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003). The determinative issue in such cases "is not whether liability *will* attach" to the resident defendant, but "whether there is arguably a reasonable basis for predicting that state law *might* impose liability based upon the facts involved." *Id.* at *3, *citing Hayes*, 2012 WL 5285775 at *4. (original emphasis).

6

I.     **THE PETITION STATES NEGLIGENCE CLAIMS AGAINST REIDLE FOR HIS ROLE IN MILLER'S CONTINUOUS ASSAULT AND MURDER OF TERRI LAMANNO USING BOTH SHOTGUNS.**

A.     **THEORIES OF LIABILITY**

1.     **Negligence *Per Se***

Post-dismissal of the Gun Show defendants, the petition pleads that Reidle was negligent *per se* because he transferred the Stevens and Remington guns to Miller in violation of 18 U.S.C. § 922 and § 571.060.1(1) RSMo.  It further avers that Reidle negligently entrusted the weapons to Miller, and that Reidle is liable as an aider and abetter.  The petition pleads that Reidle's negligence contributed to cause LaManno's death because Miller used both weapons to assault and murder her.  Finally, plaintiffs plead that LaManno experienced "pre-impact" pain and suffering during the assault that ended in her death.

As to the negligence *per se* claims, 18 U.S.C. § 922, prohibits the transfer or other disposition of a firearm to a known felon. Breach of the duties imposed by § 922 will support a claim of negligence *per se*.  *Corporan v. Wal-Mart Stores East, LP*, 194 F.Supp.3d 1128, 1131-32 (D. Kan. 2016); *Shirley v. Glass*, 308 P.3d 1, 7 (Kan. 2013).  Section 571.060.1(1) likewise prohibits a person from knowingly loaning, giving or delivering a firearm to a known felon.  As the statute is intended to protect persons and promote public safety, it establishes a standard of care.  *King v. Morgan*, 873 S.W.2d 272, 275 (Mo. App. W.D. 1994).  Its breach will therefore also support a claim of negligence *per se*.  *Id*.

Miller purportedly borrowed the Stevens shotgun from Reidle's live-in girlfriend while Reidle was not home.  Reidle knew Miller had the gun, but he never sought its return.  As to Reidle, whether that amounts to a transfer or "other disposition" of the weapon under § 922(d)(1) is an open question.  However, § 571.060.1(1) specifically prohibits loaning a firearm to a

known felon.  While Reidle might not have initially authorized the loan/delivery of the Stevens shotgun to Miller, his election to forego retrieving it gives rise to a reasonable inference that he ratified the transfer.  *E.g.*, *Wilks v. Stone*, 339 S.W.2d 590, 595 (Mo. App. S.D. 1960).  That is particularly so given Reidle's joint participation with Miller in the "straw purchase" of the Remington shotgun just days before the murders, while Miller still had the Stevens gun.

The record developed to date thus shows that "there is arguably a reasonable basis for predicting that state law *might* impose liability [on Reidle] based upon the facts involved" in the transfer of the Stevens gun, requiring remand.  *Cubie* at *3, *citing Hayes*, 2012 WL 5285775 at *4.  (original emphasis).

## 2. Negligent Entrustment

Plaintiffs also premise their wrongful death claims on a negligent entrustment theory.  To sustain those claims, plaintiffs must prove - as their petition post-dismissal of the Gun Show defendants alleges - that Reidle supplied the guns to Miller directly or through a third person knowing or having reason to know that he was likely to use them in such a way as to expose others to an unreasonable risk of physical harm.  *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 325 (Mo. 2016); 15 U.S.C. 7903(5)(B).

The facts recited above support plaintiffs' negligent entrustment claims.  Reidle supplied the Stevens gun indirectly to Miller through his girlfriend; he made no effort to retrieve it.  Reidle supplied the Remington gun to Miller directly by means of the Wal-Mart straw purchase.  At all times, Reidle knew Miller was a convicted felon.   Federal and state statutes prohibited Miller from possessing a firearm, and prohibited Reidle from supplying him with a firearm.

8

On those facts, Missouri "state law *might* impose liability [on Reidle] based upon the facts involved" in his negligent entrustment of the guns to Miller, requiring remand. *Cubie* at *3, *citing Hayes*, 2012 WL 5285775 at *4. (original emphasis).

### 3. Aiding and Abetting

Count III of the petition alleges an aider and abetter liability. Under that theory, Reidle is liable if he substantially assisted Miller's tortious acts knowing that Miller's conduct was a breach of duty, Restatement (Second) of Torts § 876(b), *Lonergan v. Bank of America, N.A.*, 2013 WL 176024 * 11 (C.D. Mo.), or if he gave substantial assistance to Miller to accomplish a tortious result and Reidle's own conduct was tortious. § 876(c).[6] Similar rules apply as a matter of Missouri common law. *Lonergan*, 2013 WL 176024 at * 11, citing cases.

The record shows that Reidle transferred both guns to Miller knowing he was a convicted felon. Reidle's transfer of the weapons, and Miller's possession of them, were prohibited by federal and state law, *i.e.*, a breach of their respective duties. Miller then used both weapons to assault and kill Terri LaManno. Under subsections (b) and (c) of § 876, and Missouri common law, Reidle is liable for aiding and abetting Miller's unlawful conduct that resulted in LaManno's wrongful death.

**B. BOTH SHOTGUNS AND ALL DEFENDANTS' UNLAWFUL ACTS CONTRIBUTED TO CAUSE TERRI LAMANNO'S DEATH.**

Apart from its pernicious rendition of the facts, Wal-Mart's removal is predicated on the legal proposition that Miller's use of the Remington gun to "assault" Terri LaManno cannot be

---

[6] "When one personally participates in causing a result in accordance with an agreement with another, he is responsible for the results of the united effort if his act, considered by itself, constitutes a breach of duty and is a substantial factor in causing the result, irrespective of his knowledge that his act for the act of the other is tortious." Comment e., § 876(c).

considered in determining whether plaintiffs have stated a claim against Reidle. Wal-Mart is wrong.

Missouri law has long-since recognized that where the negligence of multiple defendants concurs to cause a death, all defendants are liable. In *Sundermeyer v. SSM Regional Health Services*, 271 S.W.3d 552 (Mo. 2008), plaintiff sued a nursing facility claiming that its negligent care of his mother led to her death. The trial court entered summary judgment for defendant, finding that plaintiff could not prove causation where the record showed that the mother suffered from multiple other health problems. *Id.* at 553.

The *Sundermeyer* court reversed, observing:

> The general rule is that if a defendant is negligent and his [or her] negligence combines with that of another, or with any other independent, intervening cause, he [or she] is liable, although his [or her] negligence was not the sole negligence or the sole proximate cause, and although his [or her] negligence, without such other independent, intervening cause, would not have produced the injury.

*Id.* at 554-55, quoting *Harvey v. Washington*, 95 S.W.3d 93, 96 (Mo. banc 2003) (quoting *Carlson v. K–Mart Corp.*, 979 S.W.2d 145, 147 (Mo. banc 1998)).

Similarly, in *Collins v. Hertenstein*, 90 S.W.3d 87 (Mo. App. W.D. 2002), plaintiff sued three officers for the wrongful shooting death of her son. After a judgment for plaintiff, the court granted judgment notwithstanding the verdict to Officer Thomas because the evidence showed the shot he fired could not have caused the death of plaintiffs' decedent.

The *Collins* court reversed, based upon long-settled principles of Missouri law.

> Missouri law recognizes that where persons whose independent negligent acts coalesce to cause a single indivisible injury, each person may be jointly and severally liable for all the harm caused. The term "joint tortfeasor" includes a single, indivisible harm caused by independent, separate, but concurring torts of two or more persons. An indivisible injury results when two or more causes combine to produce a single injury incapable of division

on any reasonable basis. [Defendant's] conduct need not have been the sole
cause of [the] death - only a contributing cause.

*Id*. at 94. (internal citations and quotations omitted). Further, any act that accelerates death necessarily contributes to cause death, even if the act hastens death by merely a moment. *Id*. at 96.

Applying those principles, the court determined that the jury could have found that the wound inflicted by Officer Thomas "coalesced with [the acts] of [defendants] Hertenstein and Keeney to hasten Wilson's death; hence, the jury reasonably concluded that the bullet Thomas fired contributed to cause a single, indivisible injury for which Thomas could be held liable." *Id*.

The court employed a similar analysis in *Mathes v. Sher Express, L.L.C.*, 200 S.W.3d 97 (Mo. App. W.D. 2006), a crashworthiness case where plaintiffs' decedents died as a result of a combination of fires in the aftermath of a car wreck. On appeal of a judgment for plaintiffs, Ford contended that the negligence of the driver who caused the original collision cut off its liability.

The *Mathes* court rejected Ford's argument as contrary to the single indivisible injury rule. "Under this rule, where the injury (such as death) is indivisible, the original and subsequent tortfeasor are treated as jointly and severally liable for the whole injury if they both contributed in any part to the injury." *Id*. at 108. The court further observed that where multiple causes concur to produce such an injury, Missouri law holds all original, concurrent and successive tortfeasors liable for it. *Id*.

Here, the record shows that Miller initially attempted to kill LaManno with the Remington gun, but it misfired. As she stood in disbelief at what was happening to her, Miller grabbed the Stevens gun from his trunk and used it to kill her. On those facts, and under the authorities cited above, Missouri "law *might* impose liability" on Reidle – and Wal-Mart - for their roles in supplying Miller with the guns he used in the single continuous assault that resulted

in Terri LaManno's death. *Cubie* at *3, *citing Hayes*, 2012 WL 5285775 at *4. (original emphasis).

### C. BOTH SHOTGUNS AND ALL DEFENDANTS' UNLAWFUL ACTS CONTRIBUTED TO CAUSE CONSCIOUS PAIN AND SUFFERING TO TERRI LAMANNO PRIOR TO HER DEATH.

The limited record developed to date shows that Miller aimed the Remington gun at Terri LaManno and pulled the trigger, but it misfired. He then grabbed the Stevens gun from his trunk, and shot her with it. On those facts, plaintiffs are entitled to recover "pre-impact" pain and suffering damages, especially those associated with that portion of the assault involving the Remington weapon.

In *Delacroix v. Doncasters, Inc.*, 407 S.W.3d 13 (Mo. App. W.D. 2013), plaintiffs' decedents died in a plane crash. The evidence was undisputed the passengers knew the plane was going to crash for several seconds before the actual impact. On appeal of a judgment for plaintiffs, defendant contended the trial court erred in permitting plaintiffs to recover damages for the passengers' "pre-impact terror."

The *Delacroix* court disagreed and affirmed the judgment. In so doing, the court noted prior Missouri case law established that a wrongful death plaintiff can recover pain and suffering experienced by the decedent prior to his death. *Id*. at 23, citing *Blum v. Airport Terminal Services, Inc.*, 762 S.W.2d 67, 75-76 (Mo. App. E.D.1988). The court further observed that "disallow[ing] recovery of damages for pain and suffering that were determined to be the direct result of [Defendants'] actions merely because that pain and suffering occurred prior to the impact of the crash" would be inconsistent with the remedial purposes of § 537.090. *Id*.

*Delacroix*, *Blum* and the remedial dictates of § 537.090 show that Missouri "law *might* impose liability" on Reidle for the damages resulting from the pre-impact terror Terri LaManno

12

experienced during her assault and murder. That circumstance requires remand. *Cubie* at \*3, *citing Hayes*, 2012 WL 5285775 at \*4. (original emphasis).

In short, it is clear beyond cavil that, post-dismissal of the Gun Show defendants, plaintiffs' original petition continues to state a claim for wrongful death against Reidle under multiple theories based upon his role in supplying the Stevens and Remington shotguns to Miller. He is therefore properly joined as a defendant, depriving this Court of jurisdiction to do anything other than: (1) assess fees and costs against Wal-Mart for its frivolous removal of the case; and (2) remand the case to state court.

## II.    WALMART HAS NOT AND CANNOT SHOW THAT PLAINTIFFS LACK THE INTENTION TO PURSUE THEIR CLAIMS AGAINST REIDLE TO JUDGMENT.

As demonstrated above, plaintiffs petition states legitimate claims against Reidle. That should end the "fraudulent joinder" inquiry. Notwithstanding, Wal-Mart appears to suggest the Court can nevertheless exercise diversity jurisdiction if it concludes plaintiffs have "no real intention of prosecuting their claims against Mr. Reidle." Doc.1 at ¶ 13, citing *Reeb v. Wal-Mart Stores, Inc.*, 902 F. Supp. 185 (E.D. Mo. 1995). Although it is a little unclear, Wal-Mart claims to have determined that plaintiffs have no such intention because their lawyer joined Reidle's lawyer in objecting to Wal-Mart's improper questions during Reidle's deposition. Wal-Mart's position is legally, factually, and logically flawed.

*Reeb* indeed says that an alternative basis for "fraudulent joinder" is a finding that "plaintiff has no real intention of prosecuting the action against the resident defendant."[7] *Id*. at 187. Yet the *Reeb* court found that the plaintiff could not possibly make a case against the

---

[7] As authority for the "no real intention" proposition, *Reeb* cites *Anderson v. Home Ins. Co.*, 724 F.2d 82, 83 (8th Cir.1983) and *Schwenn, et al. v. Sears, Roebuck, and Co.*, 822 F.Supp. 1453, 1455–56 (D. Minn.1993). Neither case says any such thing.

resident defendant - the *sine qua non*e of fraudulent joinder. *Id*. The *Reeb* court's "no real intention" remark as an alternative basis to find fraudulent joinder even though the petition states a claim against the resident defendant is thus *dictum*.

As for the facts, it bears repeating - because Wal-Mart's removal appears are materially misleading on the point - that when Wal-Mart began questioning Reidle about the circumstances surrounding his engagement of an attorney, *Reidle's lawyer objected that the inquiry was privileged*, and plaintiffs' counsel joined the objection. *Supra* at pp. 3-5. When Wal-Mart persisted in a related line of questions, all the non-Wal-Mart lawyers in the room objected. *Id*. The objections notwithstanding, Reidle answered the questions put to him.

As to Wal-Mart's argument that the "privilege" was personal to Reidle, so what? His lawyer made the objection. Wal-Mart cites no authority holding that it is improper to join in an objection made by another party, and plaintiffs are not aware of any. They are, conversely, aware of plenty of cases holding that failing to join in an objection may result in waiver.

Moreover, Wal-Mart's questions about the circumstances under which Reidle hired a lawyer and the nature of their fee arrangement were irrelevant and inadmissible, albeit not on the basis of any privilege. In *Carlyle v. Lai*, 783 S.W.2d 925 (Mo. App. W.D. 1989), the court reversed a judgment for defendant because the trial court allowed defendant's lawyer to examine the plaintiffs as to when they first contacted legal counsel. Specifically, the court said that date was not an issue for trial, and that any response to the question could not reasonably be expected to tend to prove or disprove a fact in issue or to corroborate other relevant evidence. *Id*. at 928. The same holds true for Wal-Mart's deposition questions to Reidle on similar topics.

Beyond all that, Reidle answered the questions, so that Wal-Mart's "discovery" efforts on these issues were not thwarted. In that regard, plaintiffs' objections preserved their right to

request the court to exclude those answers at trial. To plaintiffs' understanding, that is how it is supposed to work.

Finally, even if one assumes that plaintiffs "improperly" objected to two questions in Reidle's deposition, that circumstance does not bear one way or the other on plaintiffs' intention to pursue their claims against Reidle to judgment. It most certainly does not amount to clear and convincing evidence that plaintiffs have "no real intention" of so doing, which is what Wal-Mart must show to validate its improvident removal of this case. *Cubie*, 2013 WL 1385014 at *2; *Hayes*, 2012 WL 5285775 at * 4.

## CONCLUSION

Section 1447(c) requires that the case be remanded. Justice requires that plaintiffs be awarded their coasts and fees, together with such other and further relief as the circumstances warrant.

THE ACCURSO LAW FIRM
A Professional Corporation

  /s Andrew H. McCue
Louis C. Accurso          #29827
laccurso@accursolaw.com
Andrew H. McCue          #36145
amccue@accursolaw.com
4646 Roanoke Parkway
Kansas City, Missouri 64112
PH:     (816) 561-3900
FAX:   (816) 561-2992

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 8th, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Western District of Missouri, using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

                                 /s/ Andrew H. McCue
                             ATTORNEY FOR PLAINTIFFS